Argued and submitted September 20, 1995, affirmed June 12, 1996

NORTH PACIFIC UTILITY CONTRACTORS, INC.;
and North Sky Antenna Systems, INC.,
dba North Sky Communications,
*Petitioners,*

*v.*

The Filings of the
NATIONAL COUNCIL ON
COMPENSATION INSURANCE
and SAIF Corporation,
*Respondents.*

(INS 91-07-001; CA A85674)

918 P2d 127

W. Brad Coleman argued the cause for petitioners. With
him on the brief was W. Brad Coleman & and Associates,
P.C.

Michael O. Whitty, Special Assistant Attorney General, argued the cause for respondent SAIF Corporation. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Stephanie S. Andrus argued the cause for respondent Filings of the National Council on Compensation Insurance. With her on the brief was Meyers, Radler, Replogle & Bohy.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Employer seeks review of an order of the Department of Business and Consumer Services that held employer liable for an additional premium for workers' compensation insurance provided to employer by its insurer, SAIF. We review to determine whether the department's decision is supported by substantial evidence, ORS 183.482(8)(c), and affirm.

Employer is a specialty contractor that installs electrical and telephone lines and television cable above and below ground. In April 1990, employer applied for workers' compensation insurance with the Oregon Workers' Compensation Insurance Plan, which is administered by the National Council on Compensation Insurance (NCCI). NCCI assigned SAIF to be employer's insurer.

In its application for insurance, employer described its business as "TV & Telephone cable installations." Employer also listed its workers in certain risk classifications based on their job activities so that SAIF could determine the premium to charge for the insurance coverage. It listed workers in six risk classifications: 6325, 7600, 7601, 8227, 8742 and 8810. Employer also estimated the annual amount it expected to pay to employees for work in each classification. It estimated its annual payroll for employees in classification 7600 as $125,000 and in classification 7601 as $80,000.

SAIF subsequently mailed to employer information about the workers' compensation insurance policy that it issued to employer. That information assigned all six risk classifications to employer's policy, and listed the premium rates per $100 of payroll. SAIF listed the premium rate as $21.38 per $100 of payroll for work in classification 7601, and $5.35 per $100 of payroll for work in classification 7600.

SAIF also explained to employer that it could reduce its overall workers' compensation premium by reporting employee payroll under the risk classifications for the work performed by its employees, provided that employer maintained verifiable payroll records that identified the work. SAIF explained that, if employer chose not to report work

done by its employees by classification, it would be required to report all employee wages under the highest rated classification that applied to any of the work performed by its employees.

During the period of April 1, 1990, to September 30, 1990, employer reported that all of its payroll went to workers performing work in classification 7600. That risk classification resulted in the lowest premium rate for employer.

On December 18, 1990, SAIF audited employer's payroll for the period of April 1, 1990, to September 30, 1990, and charged employer an additional insurance premium for the period. SAIF reallocated the payroll reported in classification 7600 to classifications 7601 and 6325. Petitioner timely filed a hearing request pursuant to ORS 737.318(3)(d) to contest the additional premium charged by SAIF. At issue in the hearing was whether employer erroneously reported all of its work for the period in classification 7600 and whether some of that work should have been classified under 6325 or 7601. Ultimately, the department determined that SAIF could properly reclassify employer's payroll from classification 7600 to classification 7601. The department also concluded that SAIF was not prohibited by ORS 737.310(12) from collecting the increased premium due for coverage under that classification.

ORS 737.310(12) (*since amended by* Or Laws 1991, ch 768, § 1) provided in relevant part:

"At the time a workers' compensation guaranty contract is issued, the insurer shall give written notice to the insured of the rating classifications to which the insured's employees are assigned and shall provide an adequate description of work activities in each classification. The insurer shall not bill an insured for reclassifying employees during the policy year unless:

"(a) The insured knew or should have known that the employees were misclassified * * *."

Under ORS 737.310(12), the burden is first on employer to establish that SAIF reclassified its employees and then shifts to SAIF to prove that one of the exceptions in ORS 737.310(12) applies to permit SAIF to bill employer for the

premium due for the reclassified employees. It is uncontested in this case that SAIF reclassified employer's employees.

The department found that employer "knew or should have known that all of the work performed by [employer] was not reportable under class code 7600." In determining that ORS 737.310(12) permitted SAIF to collect the increased premiums, the department concluded:

"[Employer] knew what specific work should be included in other class codes but chose to report payroll in the lowest, and therefore most advantageous, premium rate of all the rates assigned to [employer's] business, after the standard exception class codes.

"We determine that [employer] knew the correct method to report its payroll and chose to report it only in the class code most favorable to its business. Therefore, SAIF proved subsection (a) [of ORS 737.310(12)]. SAIF was entitled to collect its final premium audit billing."

The department concluded that SAIF could issue a billing that assessed additional premiums at the rate for classification 7601. Employer argues that the department ignored relevant facts in making its determination. We review to determine whether the department's decision is supported by substantial evidence, ORS 183.482(8)(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

The NCCI is the authorized compensation rating bureau for Oregon. NCCI promulgates workers' compensation classifications and rates and publishes numerical listings of the classification codes with descriptive terminology in the *Scopes of Basic Manual Classifications* (*Scopes*). *Scopes* defines each classification and describes the type of work included in each of them.

*Scopes* defines classification 7600, in part, as follows:

"Code 7600 is applied to all employees of all telephone or telegraph companies other than those employees working within the offices or exchanges. * * *

"This classification includes drivers and all employees involved in the operation and maintenance of lines away

from the exchanges, extension of lines away from the exchanges, extension of lines and the making of service connections. Specific operations contemplated by Code 7600 include clearing of right-of-ways; the erection of poles, cross-arms and insulators; the stringing of overhead low voltage lines or lead sheath cables used for multiple circuits; and the laying of underground cables. *If the operations are undertaken by specialist contractors, the classification applicable to their type of specialty work is applied.*

"* * * * *

"The following table indicates the proper classification for different types of business performing low voltage cable installation for communication purposes."

(Emphasis supplied.) The table shows that, for a specialist contractor,[1] the only types of work in the table that are placed in classification 7600 are "extension," "line maintenance" and "service connection."

*Scopes* defines classification 7601, in part, as follows:

"Code 7601 is applied to contractors engaged in telephone, telegraph or fire alarm line construction. *It is an all-inclusive classification in that it applies to all work normal and incidental to the construction of such lines when undertaken by an individual contractor.* Operations contemplated by this code include drivers; the clearing of right-of-ways; the erection of poles, cross-arms and insulators; the stringing of overhead low voltage lines or lead sheath cables used for multiple circuits; and the laying of underground cables. Code 7601 is assigned to the described operations whether the work is performed by separate crews of employees or employees who interchange between operations.

"Specialist contractors engaged in overhead telephone, telegraph or fire alarm cable coating or wrapping to form a protective covering for such cables have been assigned by analogy to Code 7601 * * *."

(Emphasis supplied.)

Thus, a comparison of classification 7600 and 7601 demonstrates that certain activities, such as "the clearing of

---

[1] Employer does not dispute that it is a specialist contractor.

right-of-ways; the erection of poles, cross-arms and insulators; the stringing of overhead low voltage lines or lead sheath cables used for multiple circuits; and the laying of underground cables," are considered 7600 activities when performed by "employees of all telephone or telegraph companies," but are considered 7601 activities when performed by "*contractors* engaged in telephone, telegraph or fire alarm line construction." (Emphasis supplied.)

Employer argues that all of its activities properly are classified as "extension," "line maintenance" and "service connection," all of which fall within classification 7600. Employer argues that the record does not demonstrate that it performed any tasks that could be considered to fall within 7601.

Work orders in evidence show that employer performed the following tasks, among others, during the disputed period: "new aerial install," "underground install," "street cut," "plow/trench," "place pole," "remove pole." Many of the invoices include a charge for "new install." Employer does not contest that it erected and removed poles, strung lines and laid underground cables during the disputed period. Employer argues, nevertheless, that those activities properly were classified as "extension," "line maintenance" and "service connection." On this record, however, the department could conclude that that contention cannot be squared with the descriptions from the *Scopes* manual. The manual states that the activities listed on the work orders, when performed by a specialist contractor, are considered 7601 activities. Those activities are reported as 7600 activities only when they are performed by employees of a telephone or telegraph company. Employer is not such a company. Hence, the department could conclude, as it did, that employer wrongly reported those activities as 7600 activities.

Employer also contends that, even if some of the activities it performed should have been classified as 7601 activities, there was so much confusion surrounding the definitions of "extension," "line maintenance" and "service connection" that it could not correctly identify which classification applied.

There is evidence in the record of confusion about the definition of certain terms. However, there also is evidence that employer originally divided its work into six classifications, including classifications 7600 and 7601. In its application for insurance, employer allocated estimated payroll to each of those classifications. The agreement signed by employer states that "employer hereby certifies that [it] has read and understands the statement[s] in this application." There was no evidence that employer was unable to complete the application or was confused about how properly to classify its activities. Taken together, those facts could reasonably support a finding that employer knew how to distinguish among the various classifications. We conclude that the department's conclusion that employer "knew or should have known that all of the work performed by [employer] was not reportable under class code 7600" is supported by substantial evidence in the record. Hence, the department did not err.

Affirmed.